UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GREGORY EASTER, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 1:17-cv-01674-JMS-MPB ) |
| DUSHAN ZATECKY, | ) ) |
| Respondent. | ) |

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Gregory Easter for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. ISR 17-02-0123. For the reasons explained in this Entry, Mr. Easter's habeas petition must be **denied**.

A. Overview

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On February 12, 2017, Investigator Conlon wrote a Conduct Report charging Mr. Easter with assault causing injury in violation of Code A-102. The Conduct Report states:

> On 2-2-17 at approx. 10:35 a.m., I Lt. Conlon was reviewing camera when I witnessed Offender Graham # 921844 and Offender Easter # 133597 stand in front of each other and then began striking each other with closed fists. Both offender[s] continued to strike each other and then they went to the ground and continued to fight. Both offender[s] were identified and stripped searched and both had bruises, cuts and scrapes on their body. Pictures were taken of each offender but Offender Graham had a laceration to his head.

Filing No. 9-1. Photographs of Mr. Graham's injuries were included with the Conduct Report. *See* Filing No. 9-2.

Mr. Easter was notified of the charge on February 23, 2017, when he received the Screening Report. He plead not guilty to the charge. He requested "any physical evidence" and the video of the incident and, as witnesses, he requested Mr. Graham and Lt. Simone. Filing No. 9-3 at 1. His requests for witnesses were denied because Mr. Graham "is the alleged other party" and Lt. Simone "was not present for the incident. [She] says she watched the video." Filing No. 9-3 at 1.

The hearing officer viewed the video evidence and completed a summary of the video, which states:

> I M. Stamper did the video review. I did witness both offender Graham #921844 and offender Easter #133597 both approach each other with closed fists. It took place in the back of the gym between both of the sides. It was more than obvious what the two offenders were about to do. They also had several offenders around them. Once the fight began between offender Graham and offender Easter they were hitting one another several times in the face and head area with closed fists. At one point in time offender Easter was able to body slam offender Graham on the floor or the weights. It was hard to tell what he got slammed on. Offender Easter was on top of offender Graham punching him several times with closes fists to the head and facial area.

Filing No. 9-8 at 1.

The disciplinary hearing was held on April 11, 2017. Mr. Easter stated at the hearing that his conduct "doesn't fit a 102." Filing No. 9-11 at 1. Based on the staff reports and the video evidence, the hearing officer found Mr. Easter guilty of assault with injuries in violation of Code A-102. The hearing officer noted that Mr. Easter admitted to "having a lock and using it to hit offender Graham in the head." Filing No. 9-11 at 1. The sanctions imposed included a 100 day earned-credit-time deprivation and a credit class demotion.

Mr. Easter appealed to Facility Head and the IDOC Final Reviewing Authority, both of which were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C. Analysis**

Mr. Easter lists five grounds on which he challenges his prison disciplinary conviction. The respondent correctly points out that Mr. Easter's five grounds amount to three distinct claims. Mr. Easter did not file a reply brief and the time to do so has passed. He therefore did not reply to the respondent's arguments. The Court will address each of Mr. Easter's three claims in turn.

*1. Changing the Charge*

Mr. Easter alleges that his rights were violated because his charge was upgraded from a Class B offense to a Class A offense. The respondent argues that this claim is procedurally defaulted because it was not raised in Mr. Easter's first administrative appeal.

To succeed on a petition for a writ of habeas corpus, a petitioner must first "exhaust[] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "Indiana does not provide judicial review of decisions by prison administrative bodies, so the exhaustion requirement in 28 U.S.C. § 2254(b) is satisfied by pursuing all administrative remedies." *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). To meet this requirement, a petitioner "must raise the issue at

each and every level in the state court system[.]" *Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004). "[W]hen the habeas petitioner has failed to fairly present . . . the claim on which he seeks relief in federal court and the opportunity to raise that claim in state court has passed, the petitioner has procedurally defaulted that claim." *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). Fair presentment requires a petitioner to "put forward [the] operative facts and controlling legal principles." *Simpson v. Battaglia*, 458 F.3d 585, 593 (7th Cir. 2006) (citation and quotation marks omitted).

The respondent is correct that Mr. Easter did not raise this claim in his first administrative appeal. *See* Filing No. 9-12 at 1-3. It is therefore procedurally defaulted.

### 2. *Denial of Witnesses*

Mr. Easter argues that he was denied due process when his request that Mr. Graham and Lt. Simone serve as witnesses was denied. As noted, his requests were denied because Mr. Graham "is the alleged other party" and Lt. Simone "was not present for the incident. [She] says she watched the video." Filing No. 9-3 at 1. The respondent contends that due process did not require that either witness be presented.

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

First, Mr. Easter did not have a right to call Lt. Simone because her testimony was irrelevant and unnecessary. *See id.* Lt. Simone was "not present for the incident" and instead only "watched the video." Filing No. 9-3 at 1. Thus her testimony would not be of any value beyond

reporting what the video revealed, which the hearing officer himself watched. Accordingly, the denial of Mr. Easter's request to call Lt. Simone as a witness did not violate Mr. Easter's due process rights.

Second, it is unclear how Mr. Graham's testimony would have been relevant or, at least, not unnecessary. Mr. Graham and Mr. Easter were both observed on the video fighting with one another. No testimony by Mr. Graham would have undermined the evidence that, as discussed further below, Mr. Easter committed the charged offense. Notably, Mr. Easter does not explain in his habeas petition how he was prejudiced by the denial of Mr. Graham as a witness. Nor, after the respondent argued that any error was harmless, did Mr. Easter file a reply brief and explain how the denial of this evidence prejudiced him. His failure to do so—especially given that it is not readily apparent how Mr. Graham's testimony would have been relevant or necessary— precludes relief on this claim. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

### 3. *Sufficiency of the Evidence*

Mr. Easter's final claim is that the evidence was insufficient. Specifically, he argues that assault with injury in violation of Code A-102 requires serious bodily injury, which was not present here.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion

reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Code A-102 is entitled "Assault/Battery," and is defined as "[c]omitting battery/assault upon another person with a weapon (including the throwing of body fluids or waste on another person) or inflicting serious bodily injury." Indiana Department of Correction Adult Disciplinary Process, Appendix I: Offenses, available at http://www.in.gov/idoc/files/02-04-01_ APPENDIX_I-OFFENSES_6-1-2015(1).pdf. "Serious bodily injury" is defined as follows:

> [a]n injury to a person that requires urgent and immediate medical treatment (normally more extensive than mere first aid, such as bandaging a wound; but which might include stitches, setting of broken bones, treatment of concussion, etc.) and/or that creates a substantial risk of death or that causes:
>
> - Serious permanent disfigurement;
> - Unconsciousness;
> - Extreme pain;
> - Permanent or protracted loss or impairment of the function of a bodily member or organ; or
> - Loss of a fetus.

Indiana Department of Correction Policy and Administrative Procedure, The Disciplinary Code for Adult Offenders, available at http://www.in.gov/idoc/files/02-04-01_The_Disciplinary_Code_ for_Adult_Offenders___6-1-2015.pdf.

There is certainly some evidence in the record that Mr. Easter violated Code A-102. As an initial matter, he admitted to the hearing officer that he used a lock to hit Mr. Graham in the head.

*See* Filing No. 9-11 at 1. This admission alone is sufficient to show that Mr. Easter battered another person with a weapon.[1]

Another way to violate Code A-102 is by assaulting or battering someone in such a way that causes serious bodily injury. The definition of serious bodily injury includes causing extreme pain. The Conduct Report reflects that Mr. Easter punched Mr. Graham "several times in the face and head area with closed fists," "body slam[med] [Mr.] Graham on the floor or the weights," and "was on top of [Mr.] Graham punching him several times with closes fists to the head and facial area." Filing No. 9-1 at 1. Photographs attached to the Conduct Report show, among other injuries, that Mr. Graham suffered a substantial head wound. *See* Filing No. 9-2 at 2. Such conduct and the injuries it caused certainly constitutes "some evidence" that Mr. Easter's assault caused Mr. Graham extreme pain. Moreover, the Seventh Circuit has concluded that evidence of a similar assault was sufficient to show assault causing "seriously bodily injury" due to extreme pain. *Calligan v. Wilson*, 362 Fed. Appx. 543, 545 (7th Cir. 2009) ("The record contains some evidence that [the victim] experienced extreme pain because he sustained a punch to the eye so hard that it immediately felled him and caused bruises significant enough to require two rounds of medical treatment."). For these reasons, Mr. Easter's challenge to the sufficiency of the evidence must be rejected.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there

---

[1] In his first administrative appeal, Mr. Easter stated that he never told the hearing officer that he used a lock to strike Mr. Graham. Mr. Easter did not raise this issue in his habeas petition, nor did he file a reply brief contesting that fact here, and thus he has waived any challenge to it.

was no constitutional infirmity in the proceeding which entitles Mr. Easter to the relief he seeks. Accordingly, Mr. Easter's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 11/15/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

GREGORY EASTER
133597
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Andrea Elizabeth Rahman
OFFICE OF THE INDIANA ATTORNEY GENERAL
andrea.rahman@atg.in.gov